# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN I. MCALLISTER,<br><br>            Plaintiff,<br><br>    v.<br><br>J.E. GUNJA, et al.,<br><br>            Defendants.<br>_____/ | CASE NO. 1:06-cv-00082-OWW-SKO PC<br><br>FINDINGS AND RECOMMENDATIONS RECOMMENDING THAT DEFENDANTS' MOTION FOR SUMMARY JUDGMENT BE GRANTED IN PART AND DENIED IN PART<br><br>(Doc. 31)<br><br>OBJECTIONS DUE WITHIN 30 DAYS |

      Plaintiff John I. McAllister ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388, 91 S.Ct. 1999 (1971), which provides a remedy for violation of civil rights by federal actors.  Plaintiff claims that Defendants Martin, McCarty, Gordon, Boister, and Brown retaliated against Plaintiff for the exercise of his First Amendment rights.  Plaintiff also claims that Defendant Schultz violated Plaintiff's Eighth Amendment rights through his deliberate indifference to an excessive risk to Plaintiff's safety.

      On January 4, 2010, Defendants McCarty, Gordon, Brown, Schultz, and Martin filed a motion for summary judgment.[1]  (Doc. #31.)  Plaintiff filed an opposition on February 17, 2010.  (Doc. #35.)  Defendants filed a reply to Plaintiff's opposition on February 25, 2010.  (Doc. #36.)  Plaintiff filed a surreply on March 29, 2010.  (Doc. #37.)

///

---

[1] Defendant Boister has not made an appearance in this action.  On April 29, 2009, a summons was returned unexecuted as to Defendant Boister.  (Doc. #20.)  The summons indicated that Boister was deceased.

1

I.   **Background**

    A.   **Plaintiff's Claims**

Plaintiff's complaint asserts claims against Defendants for deliberate indifference to an excessive threat to Plaintiff's safety in violation of the Eighth Amendment and claims for retaliation against Plaintiff's exercise of his right under the First Amendment to file grievances against the government. Plaintiff alleges that he was seriously injured by a softball on February 14, 2004. He claims that the layout of the softball field in the prison yard posed an excessive risk to inmates walking down a walkway near the softball field. Plaintiff claims that Defendant Schultz was aware of the inherently dangerous conditions of the softball field, but did nothing to protect inmates like Plaintiff from harm. Plaintiff concludes that Schultz's inaction caused him to be hit by a softball, causing permanent blindness in his eye.

Plaintiff also claims that he filed a complaint regarding his injury through the prison's administrative appeal system. Plaintiff claims that Defendants transferred Plaintiff from his job as a repairman to a job as an electrician and later fired him from that job in retaliation for the filing of his administrative complaint. Plaintiff also claims that he was transferred to the Federal Correctional Institution in Terre Haute, Indiana ("Terre Haute") in June 2005 in retaliation for Plaintiff's complaint. Plaintiff claims that Defendants Martin, McCarty, Gordon, Boister, and Brown are liable for retaliating against him.

    B.   **Defendants' Motion for Summary Judgment**

On January 4, 2010, Defendants McCarty, Gordon, Brown, Schultz, and Martin filed a motion for summary judgment. Defendants Brown, Gordon, Martin and McCarty argue that they are entitled to summary judgment pursuant to Federal Rule of Civil Procedure 56 because Plaintiff has failed to present any evidence that supports the inference that he was fired from his job in retaliation for filing an administrative complaint, and has presented no evidence to support the inference that Plaintiff was transferred to Terre Haute in retaliation for filing an administrative complaint. (Mem. of P. & A. in Supp. of Defs.' Mot. for Summ. J. 7:24-12:17.) Defendants contend that Plaintiff was not fired from his prison job in retaliation for filing an administrative complaint, as evidenced by the fact that Plaintiff continued to work for more than a year after he filed his

1  administrative complaint concerning the softball incident. (P. & A. in Supp. of Mot. for Summ. J. 10:24-26.) Defendants argue that Defendants Martin and McCarty were not even aware that Plaintiff had filed an administrative complaint about his softball injury (P. & A. in Supp. of Mot. for Summ. J. 11:4-7); Defendant Brown had no role in responding to Plaintiff's complaint and had no involvement in Plaintiff's work assignments (P. & A. in Supp. of Mot. for Summ. J. 11:8-10); and Defendant Gordon supervised a different work crew, had no authority over Plaintiff's work assignments, and was not aware that Plaintiff was injured until he read the complaint in this action (P. & A. in Supp. of Mot. for Summ. J. 11:11-15.) Finally, Defendants contend that Plaintiff was transferred to Terre Haute because Plaintiff requested a transfer, and not in retaliation for filing an administrative complaint. (P. & A. in Supp. of Mot. for Summ. J. 11:20-12:17.)

Defendant Schultz argues that he is entitled to summary judgment because Plaintiff has failed to present any evidence to support the inference that Schultz acted with deliberate indifference toward an excessive risk to Plaintiff's safety. (P. & A. in Supp. of Mot. for Summ. J. 12:18-19:14.) Schultz also argues that Plaintiff's injuries were the result of a freak accident, and not an objectively unreasonable danger. (P. & A. in Supp. of Mot. for Summ. J. 13:22-14:19.)

Finally, Defendants argue that they are entitled to qualified immunity. (P. & A. in Supp. of Mot. for Summ. J. 19:15-25:2.) Defendants argue that nothing about the softball incident would have reasonably put Schultz on notice that his failure to act was unconstitutional. (P. & A. in Supp. of Mot. for Summ. J. 21:14-23.) Defendants further argue that Martin, McCarty, Gordon, and Brown could not have reasonably known that their actions violated a clearly establish constitutional right because they did not even know about Plaintiff's administrative complaints, were not involved in removing Plaintiff from his job, and did not act in a retaliatory manner. (P. & A. in Supp. of Mot. for Summ. J. 24:1-18.)

### C.   Plaintiff's Opposition

In his opposition, Plaintiff argues that Defendants were aware of the danger posed by the softball field. Plaintiff contends that Defendants Schultz and Martin were standing by the north corner of the yard and saw softballs hit the sidewalk and almost hit other prisoners. (Pl.'s Mot. in Opp'n of Defs.' Mot. for Summ. J., and Mem. of P. & A. 7:25-8:1.) Plaintiff contends that the risk

of injury was obvious. (Opp'n 8:9-11.) Plaintiff asserts that he observed Schultz witness the softballs hit the sidewalk, and presents affidavits from other prisoners who have observed the same. (Opp'n 8:4-8.) Plaintiff argues that this evidence is sufficient to create a triable issue of fact on the question whether Schultz acted with deliberate indifference. (Opp'n 10:15-22.)

Plaintiff further argues that he states a claim for retaliation. (Opp'n 12:1-16:5.) Plaintiff argues that the right to be free from retaliation was clearly established (Opp'n 14:3-27); and contends that his transfer to Terre Haute was adverse because it was unsafe, unsanitary, and was a "pigsty" (Opp'n 12:3-8).

### D. **Defendants' Reply**

In their reply to Plaintiff's opposition, Defendants argue that Plaintiff has failed to provide any evidence that Defendants fired Plaintiff from his prison job. (Reply in Supp. of Defs.' Mot. for Summ. J. 2:15-4:21.) Defendants argue that Plaintiff has failed to present any evidence that Defendants had any role in transferring Plaintiff to Terre Haute. (Reply 4:22-6:5.) Finally, Defendants argue that Plaintiff has failed to present sufficient evidence that Defendant Schultz acted with deliberate indifference. (Reply 6:6-8:14.)

### E. **Plaintiff's Surreply**

On March 29, 2010, Plaintiff filed "Plaintiff's Reply to Defendants[sic] Motion for Summary Judgment." (Doc. #37.) Plaintiff's reply was filed after, and in response to, Defendants' reply to Plaintiff's opposition to the motion for summary judgment. In terms of proper motion practice, the Local Rules explicitly recognize the filing of a motion, an opposition to the motion, and a reply to the opposition. See Local Rule 230(b)-(d). The rules governing motion practice in prisoner actions also limit explicit recognition to the motion, opposition, and reply. See Local Rule 230(l). "All such motions will be deemed submitted twenty-eight (28) days after the service of the motion or when the reply is filed, whichever comes first." Local Rule 230(l).

Neither the Federal Rules of Civil Procedure nor the Local Rules explicitly recognize Plaintiff's filing, otherwise known as a surreply. Plaintiff has not filed a motion requesting permission to file a surreply and the Court did not ask Plaintiff to submit a surreply. Thus, Plaintiff's filing is improper and the Court will recommend that it be stricken from the record.

## II. Discussion

### A. Summary Judgment Legal Standard

Pursuant to Federal Rule of Civil Procedure 56, a party may move for summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." "[A] party seeking summary judgement always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

"Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322. "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 322-23. After the moving party makes a sufficient showing regarding such failure of proof, the nonmoving party must then "go beyond the pleadings and by [his or] her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Id. at 324 (quoting Federal Rule of Civil Procedure 56(e)).

### B. Defendants' Motion for Summary Judgment for Failure of Proof

Defendants move for summary judgment on the grounds that Plaintiff bears the burden of proof at trial and there is a complete failure of proof concerning essential elements of Plaintiff's case. However, the Court notes that summary judgment is only appropriate "after adequate time for discovery." Celotex Corp., 477 U.S. at 322.

A review of the docket reveals that on September 14, 2009, Defendants moved for a stay of discovery pending Defendants' motion for summary judgment. (Doc #27.) Defendants indicated that Plaintiff served on Defendants a request for production of documents which included a request

for the "personnel file" of each of the Defendants. (Mem. of P. & A. in Supp. of Defs.' Mot. to Stay Disc. Pending Resolution of Qualified Immunity Defense 2:18-24.) Defendants' motion was granted on November 18, 2009. (Doc. #30.) Thus, when Defendants' filed their motion to dismiss, discovery had been stayed and Plaintiff did not receive responses to his document production request.

It is doubtful that Plaintiff has received "adequate time for discovery" to oppose Defendants' argument that there is a failure of proof concerning essential elements of Plaintiff's case. At the same time, the Court notes that Plaintiff has not submitted an affidavit pursuant to Federal Rule of Civil Procedure 56(f) showing that he "cannot present facts essential to justify [his] opposition" and that the Court should accordingly deny Defendants' motion for summary judgment or "order a continuance to enable affidavits to be taken, or other discovery to be undertaken." Further, Plaintiff has not properly objected to Defendants' statement of undisputed facts.[2] Plaintiff has made no argument that further discovery would enable Plaintiff to present facts essential to oppose Defendants' motion.[3] However, this failure likely stems from Plaintiff's pro se status and lack of legal education. See Balistreri v. Pacifica Police Dept., 901 F.2d 696, 699 (9th Cir. 1990) (court has duty to ensure that pro se litigants do not lose their right to a hearing on the merits of their claim due to ignorance of technical procedural requirements and pro se pleadings are liberally construed, particularly where civil rights claims are involved). In their motion for a stay of discovery, Defendants attached a set of document production requests propounded by Plaintiff. (Decl. of Benjamin E. Hall in Supp. of Defs.' Mot. to Stay Disc. Pending Resolution of Qualified Immunity Defense, Ex. A.) Having reviewed the document requests, it is apparent that further discovery may

---

[2] Plaintiff is advised that Local Rule 260(b) requires that Plaintiff's opposition "reproduce the itemized facts in the Statement of Undisputed Facts and admit those facts that are undisputed and deny those that are disputed, including with each denial a citation to the particular portions of any pleading, affidavit, deposition, interrogatory answer, admission, or other document relied upon in support of that denial."

[3] The Court also notes that Plaintiff did not oppose Defendants' motion to stay discovery. However, in fairness to Plaintiff, Defendants' motion for a stay requested a stay "pending resolution of the issue of qualified immunity." (Defs.' Mot. to Stay Disc. Pending Resolution of Qualified Immunity Defense 1:18-21.) Defendants did not express an intent to move for summary judgment on the basis of Plaintiff's failure of proof. Thus, it was unclear whether Defendants' motion would rely on matters outside the pleadings, and Plaintiff may not have thought it necessary to object to the stay.

6

lead to the discovery of evidence that Plaintiff may use to oppose Defendants' motion for summary judgment.

The Court will deny Defendants' motion with respect to their arguments regarding Plaintiff's failure of proof without prejudice to Defendants' ability to re-file their motion after adequate time for discovery.

### C.      Defendants' Motion for Summary Judgment Based on Qualified Immunity

Defendants assert the defense of qualified immunity with respect to Plaintiff's claims. "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Pearson v. Callahan, 129 S. Ct. 808, 815 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). "The protection of qualified immunity applies regardless of whether the government official's error 'is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact.'" Id. (quoting Groh v. Ramirez, 540 U.S. 551, 567 (2004) (Kennedy, J., dissenting)). Because qualified immunity serves as an immunity from suit rather than a mere defense to liability, questions regarding qualified immunity should be resolved at the earliest possible stage in litigation. Id.

In Saucier v. Katz, 533 U.S. 194 (2001), the Supreme Court mandated a two-step sequence for resolving claims of qualified immunity. First, a court must decide whether the facts alleged by a plaintiff set forth a violation of a constitutional right. Saucier, 533 U.S. at 201. Second, if the plaintiff has satisfied the first step, the court must decide whether the right at issue was "clearly established" at the time of defendant's alleged misconduct. Id. If the defendant did not violate a clearly established constitutional right, the defendant is entitled to qualified immunity from plaintiff's claims. Pearson, 129 S. Ct. at 816 (citing Anderson v. Creighton, 483 U.S. 635, 640 (1987)). However, the Supreme Court has since held that the Saucier sequence is not mandatory in all cases and courts may resolve the "clearly established" question first when the Saucier sequence would result in a "substantial expenditure of scarce judicial resources on difficult questions that have no effect on the outcome of the case." Id. at 818.

///

1. **Defendant Schultz Is Entitled To Qualified Immunity From Plaintiff's Eighth Amendment Claim**

Plaintiff claims that Defendant Schultz violated Plaintiff's rights guaranteed by the Cruel and Unusual Punishments Clause of the Eighth Amendment by failing to protect Plaintiff from the threat of falling softballs hit from the prison's softball field. As discussed below, the Court finds that Defendant Schultz is entitled to qualified immunity because the facts alleged by Plaintiff do not make out a violation of a constitutional right.

The Eighth Amendment prohibits the imposition of cruel and unusual punishments and "embodies 'broad and idealistic concepts of dignity, civilized standards, humanity and decency.'" Estelle v. Gamble, 429 U.S. 97, 102 (1976) (quoting Jackson v. Bishop, 404 F.2d 571, 579 (8th Cir. 1968)). A prison official violates the Eighth Amendment only when two requirements are met: (1) the objective requirement that the deprivation is "sufficiently serious," and (2) the subjective requirement that the prison official has a "sufficiently culpable state of mind." Farmer v. Brennan, 511 U.S. 825, 834 (1994) (quoting Wilson v. Seiter, 501 U.S. 294, 298 (1991)).

The objective requirement that the deprivation be "sufficiently serious" is met where the prison official's act or omission results in the denial of "the minimal civilized measure of life's necessities." Id. (quoting Rhodes v. Chapman, 452 U.S. 337, 347 (1981)). The subjective requirement that the prison official has a "sufficiently culpable state of mind" is met where the prison official acts with "deliberate indifference" to inmate health or safety. Id. (quoting Wilson, 501 U.S. at 302-303). A prison official acts with deliberate indifference when he or she "knows of and disregards an excessive risk to inmate health or safety." Id. at 837. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id.

"It is undisputed that the treatment a prisoner receives in prison and the conditions under which [the prisoner] is confined are subject to scrutiny under the Eighth Amendment." Helling v. McKinney, 509 U.S. 25, 31 (1993). "The Eighth Amendment's prohibition against cruel and unusual punishment protects prisoners not only from inhumane methods of punishment but also from inhumane conditions of confinement." Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006).

Prison officials must provide prisoners with "food, clothing, shelter, sanitation, medical care, and personal safety." Toussaint v. McCarthy, 801 F.2d 1080, 1107 (9th Cir. 1986). "[W]hile conditions of confinement may be, and often are, restrictive and harsh, they 'must not involve the wanton and unnecessary infliction of pain.'" Morgan, 465 F.3d at 1045 (quoting Rhodes v. Chapman, 452 U.S. 337, 347 (1981)).

Plaintiff's Eighth Amendment claim against Defendant Schultz fails to meet the objective standard of a "sufficiently serious" deprivation. The threat of injury from softballs is not so objectively serious that it could be characterized as "the wanton and unnecessary infliction of pain." Plaintiff's injury from the softball, while serious, was nothing more than an "unforeseeable accident." See Wilson v. Seiter, 501 U.S. 294, 297 (1991) (quoting Louisiana ex rel. Franics v. Resweber, 329 U.S. 459, 463 (1947) (An "unforeseeable accident" that interfered with execution did not "add an element of cruelty" to the execution. "The situation of the unfortunate victim of this accident is just as though he had suffered the identical amount of mental anguish and physical pain in any other occurrence, such as, for example, a fire in the cell block")). The Eighth Amendment does not provide a guarantee that Plaintiff will be protected from random accidents.

The facts alleged by Plaintiff fail to demonstrate a risk of harm so excessive that it constituted cruel and unusual punishment. The Court cannot fathom a softball scenario so inherently dangerous that being asked to traverse a walkway adjacent to a softball field is so objectively unreasonable that society would condemn it as cruel and unusual. See Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950 (2009) ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense"); Kennedy v. Louisiana, 128 S. Ct. 2641, 2649 (2008) (Eighth Amendment draws its meaning from the evolving standards of decency that mark the progress of a maturing society). Walking near a softball field is neither "cruel" nor "unusual." That Plaintiff suffered serious injury from the softball does not per se create a constitutional violation. The Eighth Amendment legal standards speak of "excessive risks," implying an element of probability. Serious injuries from low probability accidents do not fall within the purview of the Eighth Amendment. See Helling, 509 U.S. at 36 ("prisoner must show that the risk of which he complains is not one that today's society

chooses to tolerate"); Christopher v. Buss, 384 F.3d 879 (7th Cir. 2004) ("the risk of being hit by a softball as a result of a hazardous field condition is not one that 'today's society chooses not to tolerate'") (quoting Helling, 509 U.S. at 36). Plaintiff's allegations fail to constitute a violation of his constitutional rights. Accordingly, Defendant Schultz is entitled to qualified immunity.

The Court notes that the findings made in these Findings and Recommendations deviate from the findings made in the Court's January 13, 2009 screening order. (Doc. #13.) In the screening order, the Court found that Plaintiff's complaint stated a cognizable claim under the Eighth Amendment against Defendant Schultz based on the dangerous conditions of the softball field. However, the Court's January 13, 2009 screening order was issued before the Supreme Court rendered its decision in Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009), on May 18, 2009. Iqbal clarified the Federal Rule of Civil Procedure 8(a)(2) pleading standard. In Iqbal, the Supreme Court held that a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949 (citing Bell Atlantic v. Twombly, 550 U.S. 544, 556 (2007)). The Supreme Court clarified that the pleading standard focuses on plausibility, not mere probability. Id. at 1949.

The Court's January 13, 2009 screening order was issued before Iqbal and found that Plaintiff's complaint was sufficient because it was possible that the softball field was so dangerous that it violated the Eighth Amendment. The screening order was based on the rationale that it was possible that at trial, Plaintiff would be able to demonstrate that the softball field was unusually dangerous and that the danger of falling softballs was so severe that it was cruel and unusual punishment for prisoners to walk near the field.

It is clear under Iqbal that the rules for pleading are not so lenient as to allow Plaintiff to proceed on his claim without pleading additional facts that pushes his claims across the line between possibility and plausibility of entitlement to relief. See id. Given the facts alleged in Plaintiff's complaint, it simply is not plausible that the softball field posed a "sufficiently serious" risk to Plaintiff's safety. Plaintiff has alleged no facts to suggest that the softball field was unusually dangerous, and it is not plausible to infer that an ordinary softball field poses a risk to a person's safety that is so serious that it could be characterized as a cruel and unusual hazard in a prison yard.

1  See id. at 1950 ("Determining whether a complaint states a plausible claim for relief will . . . be a
2  context-specific task that requires the reviewing court to draw on its judicial experience and common
3  sense"). Thus, the Court finds that Plaintiff's allegations do not meet the pleading standard set forth
4  in Iqbal.

5  　　　The Court finds that Defendant Schultz is entitled to qualified immunity from the claims
6  raised in Plaintiff's complaint. Plaintiff has not pleaded facts that plausibly demonstrate that
7  Defendant Schultz violated Plaintiff's constitutional right. However, the Court notes that pro se
8  litigants are typically given leave to amend a complaint if it is at all possible that the deficiencies in
9  their pleading can be cured by amendment. See Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2007)
10 (recognizing longstanding rule that leave to amend should be granted even if no request to amend
11 was made unless the court determines that the pleading could not possibly be cured by the allegation
12 of other facts); Noll v. Carlson, 809 F.2d 1446, 1448 (9th Cir. 1987) (pro se litigant must be given
13 leave to amend his or her complaint unless it is absolutely clear that the deficiencies of the complaint
14 could not be cured by amendment). The Court advises Plaintiff that he may file a motion requesting
15 leave to amend pursuant to Federal Rule of Civil Procedure 15(a)(2) if he believes that he can plead
16 facts that plausibly demonstrate that the softball field posed a serious risk to his safety. See Federal
17 Rule of Civil Procedure 15(a)(2) ("a party may amend its pleading only with the opposing party's
18 written consent or the court's leave"). However, Plaintiff is also advised that any such motion must
19 include a description of the additional facts that Plaintiff intends to plead so that the Court can
20 determine whether an amendment would satisfy the Iqbal pleading standard.

21  　　　**2.　　Defendants McCarty, Gordon, Brown and Martin Are Not Entitled To
22  　　　　　　Qualified Immunity With Respect To Plaintiff's Retaliation Claims**

23 　　　Defendants also argue that they are entitled to qualified immunity with respect to Plaintiff's
24 retaliation claims. Defendants concede that in the context of the qualified immunity defense, "the
25 . . . prohibition against retaliatory punishment is clearly established law in the Ninth Circuit." (P.
26 & A. in Supp. of Mot. for Summ. J. 24:3-5.) Defendants nonetheless argue that they are entitled to
27 qualified immunity because Defendants Martin, McCarty, Gordon, and Brown did not have any role
28 in the processing of Plaintiff's administrative complaints and did not remove Plaintiff from his job

in the Facilities Department.  Defendants further argue that Plaintiff was transferred from USP-Atwater pursuant to Plaintiff's own request and that Defendants had no role in selecting Terre Haute as the transfer destination.

Defendants' assertion of qualified immunity relies on matters outside the pleadings. Defendants point to assertions made in their own declarations to support their contention that they had no role in processing Plaintiff's administrative complaint, were not involved in removing Plaintiff from his job, and did not transfer Plaintiff to Terre Haute.  As noted earlier, there has not been adequate discovery in this matter to grant judgment in Defendants' favor based on matters outside the pleadings.  See discussion supra Part II.A.  Through further discovery, Plaintiff may be able to obtain evidence to rebut Defendants' assertions.  The Court will recommend that Defendants' qualified immunity defense be denied without prejudice to their ability to raise it again after adequate discovery has been conducted.

### III.  Conclusion and Recommendation

The Court finds that Defendants' motion for summary judgment is premature because Plaintiff has not had sufficient opportunity to conduct discovery to present facts essential to justify his opposition.  However, based on matters entirely within the pleadings, the Court finds that Defendant Schultz is entitled to qualified immunity against Plaintiff's Eighth Amendment claim.

Accordingly, it is HEREBY RECOMMENDED that:

1. Plaintiff's surreply, filed on March 29, 2010, be STRICKEN from the record;
2. Defendant Schultz be dismissed from this action based on the defense of qualified immunity;
3. Defendants' motion for summary judgment be denied, without prejudice, on all other grounds; and
4. This action proceed on Plaintiff's retaliation claims against Defendants McCarty, Gordon, Brown, Schultz, Martin and Boister[4].

These Findings and Recommendations are submitted to the United States District Judge

---

[4] In separate order, the Court will order Plaintiff to show cause why Defendant Boister should not be dismissed from this action due to Plaintiff's failure to move to substitute Boister's estate as a defendant.

assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1). Within thirty (30) days after being served with these Findings and Recommendations, any party may file written objections with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within ten (10) days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:   July 12, 2010**                              /s/ Sheila K. Oberto
                                              UNITED STATES MAGISTRATE JUDGE